UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
GREGG WARNER,                                              Index No.

                Plaintiff,

                                                        **COMPLAINT**

  -against-

E_M CUSTOM FLOORING
INSTALLATIONS, INC., RADIANT
DRYWALL & INSULATION CORP. a/k/a RADIANT
INSULATION SYSTEMS, and
WAYNE KOGEL                                                Jury Trial Demanded


                Defendants.
-------------------------------------------------------------

Plaintiff, Gregg Warner ("Plaintiff"), by his attorney, THE LAW OFFICE OF JON A. STOCKMAN, as and for his Complaint, respectfully alleges the following:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants E_M Custom Flooring Installations, Inc., Radiant Drywall & Insulation Corp. a/k/a Radiant Insulation Systems[1], and Wayne Kogel (collectively referred to as "Defendants") pursuant to the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq.

## JURISDICTION AND VENUE

2. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim occurred within this judicial district and because Defendants reside within this judicial district.

---

[1] Defendants E_M Custom Flooring Installations Inc. and Radiant Drywall & Insulation Corp. a/k/a Radiant Insulation Systems shall collectively be referred to as "the Corporate Defendants."

1

3. This Court possesses jurisdiction over this action because it involves a federal claim.

4. Within three hundred (300) days of his termination, Plaintiff filed a Charge with the United States Equal Employment Opportunity Commission (EEOC) alleging that the Corporate Defendants terminated him because of his age (EEOC Charge 520-2021-00347).

5. On April 21, 2021, the EEOC issued a Right to Sue Letter pertaining to EEOC Charge 520-2021-00347.

6. This action is being filed within ninety (90) days of the EEOC's issuing the aforementioned Right to Sue Letter.  (**See Exhibit A**)

## THE PARTIES

7. Plaintiff is a resident of the State of New York, County of Suffolk.

8. Defendant E_M Custom Flooring Installations, Inc. is a domestic business corporation with its principal executive office located at 390 Middle Country Rd, Middle Island, NY 11953.

9. At all times relevant to this Complaint, Defendant E_M Custom Flooring Installations, Inc. engaged in interstate commerce.

10. Defendant Radiant Drywall & Insulation Corp. is a domestic business corporation with its principal executive office located at 73 Hawkins Avenue, Center Moriches, NY 11934.

11. At all times relevant to this Complaint, Defendant Radiant Drywall & Insulation Corp. a/k/a Radiant Insulation Systems employed more than twenty (20) employees.

12. At all times relevant to this Complaint, Defendant Radiant Drywall & Insulation Corp. a/k/a Radiant Insulation Systems engaged in interstate commerce.

13. At all times relevant to this Complaint, The Corporate Defendants are/were a joint employer and/or single integrated enterprise.

14. Both of the Corporate Defendants are/were operated by Defendant Wayne Kogel, who is/was the Chief Executive Officer of both entities.

15. As Chief Executive Officer of both of the Corporate Defendants, Defendant Wayne Kogel was the lead decisionmaker for both entities.

16. The Corporate Defendants shared employees. For example, Plaintiff was the Controller of both of the Corporate Defendants and received compensation from both companies. Moreover, Scott Kogel performed work for both of the Corporate Defendants and received compensation from both companies. Additionally, Carolyn Pollina performed work for both of the Corporate Defendants.

17. Moreover, the Corporate Defendants shared office space at 390 Middle Country Rd, Middle Island, NY 11953.

18. At all times relevant to the Complaint, the Corporate Defendants together employed more than twenty (20) employees.

19. Defendant Wayne Kogel is a resident of the State of New York, County of Nassau.

20. At all times relevant to this Complaint, Defendant Wayne Kogel was the Chief Executive Officer of both of the Corporate Defendants.

21. As Chief Executive Officer of both of the Corporate Defendants, Defendant Wayne Kogel possessed the authority to hire and fire employees of both of the Corporate Defendants. For example, Defendant Wayne Kogel hired Plaintiff. Additionally, Defendant Wayne Kogel terminated Plaintiff.

22. As Chief Executive Officer of both of the Corporate Defendants, Defendant Wayne Kogel determined the compensation and hours of employees working for E_M and the compensation and hours of employees working for Radiant.

23. Defendant Wayne Kogel can be held liable as an aider and abetter because he actually participated in the decision to terminate Plaintiff's employment.

## THE FACTS

24. Plaintiff was employed by Defendant Wayne Kogel as Controller for over twenty-one (21) years prior to his termination. At the time of Plaintiff's termination, he was the Controller of both of the Corporate Defendants.

25. Defendants "furloughed" Plaintiff on or about March 31, 2020 and then terminated Plaintiff's employment on or about June 8, 2020.

### *Plaintiff's Membership In A Protected Class*

26. At the time of Plaintiff's termination, Plaintiff was sixty-six (66) years old.

27. Defendants were aware of Plaintiff's age (or relative age). As evidence of this, Plaintiff told Defendant Wayne Kogel and then co-owner Larry Kogel in or around spring, 2014 that he was sixty (60) years old. As additional evidence that Wayne Kogel was aware of Plaintiff's age (or relative age), Defendant Wayne Kogel questioned Plaintiff when he was going to retire and collect social security (about 3 months before Defendants furloughed Plaintiff). Moreover, Plaintiff believes that he looked like he was in his late sixties (60s) around the time Defendants furloughed him. Additionally, Plaintiff believes that Defendants maintained a personnel file with documents containing his date of birth.

### *Plaintiff Was Qualified For His Position*

28. Plaintiff possessed the requisite educational qualifications to serve as Controller of the Corporate Defendants.

29. Plaintiff possessed a four (4) year accounting degree and prior to being hired by Defendants, Plaintiff spent time working in public accounting and served as Controller of two (2) other companies.

30. Throughout Plaintiff's over two (2) decade tenure with Defendants, Plaintiff performed strongly.

31. Defendants never formally disciplined Plaintiff.  Defendants never issued Plaintiff a written warning.  Nor did Defendants ever warn Plaintiff that his employment was in danger.

### *Adverse Employment Action*

32. On or about March 31, 2020 (shortly after Plaintiff's 66th birthday), Defendant Wayne Kogel informed Plaintiff he was being furloughed.

33. On or about June 8, 2020, Defendant Wayne Kogel notified Plaintiff that his position was being eliminated and that he was being terminated.  Defendant Wayne Kogel indicated that the companies did not look like they were going to do well.

### *Inference of Age Discrimination*

a. *Ageist Comments*

34. Prior to Plaintiff's termination, Defendant Wayne Kogel made ageist comments.

35. Most recently, on December 24, 2020 (about 3 months before Plaintiff was furloughed), Defendant Wayne Kogel questioned Plaintiff when he was going to retire and collect social security.

36. Additionally, on other occasions, Defendant Wayne Kogel told Plaintiff "you're getting old, when are you going to retire".

37. As additional evidence of Mr. Kogel's ageist animus, in or around January, 2019, Plaintiff heard Wayne Kogel tell Scott Kogel that a particular job candidate was "too old." Plaintiff also heard Wayne Kogel say to Scott Kogel "wouldn't you prefer the younger candidate, I am doing this for you." Ultimately, Defendants offered to hire the younger candidate over the older candidate. In Plaintiff's opinion, the older candidate was more qualified than the younger candidate. Notably, when the younger candidate turned down Defendants' offer, Defendants chose to hire the next youngest candidate rather than the older candidate, even though the older candidate was more qualified.

38. As additional evidence of age discrimination, in or around fall, 2019, when Plaintiff indicated to Wayne Kogel that a particular customer sounded sickly or old, Wayne Kogel responded that the customer was "not as old as you are."

  b. **Many of Plaintiff's job responsibilities were transferred to significantly younger individuals**

39. As further evidence that Defendants terminated Plaintiff because of his age, a significant number of Plaintiff's duties as Controller were transferred to Scott Kogel, who to the best of Plaintiff's knowledge is thirty-three (33) years old, and Carolyn Pollina, who to the best of Plaintiff's knowledge is fifty-four (54) years (about 12 years younger than Plaintiff).

40. For much of Plaintiff's tenure as Controller, Plaintiff was involved in hiring Defendants' office personnel. Prior to Plaintiff's termination, Plaintiff's office recruitment responsibilities were transferred to Scott Kogel.

41. For much of Plaintiff's tenure as Controller, Plaintiff was responsible for purchasing office supplies. Prior to Plaintiff's termination, Plaintiff's office supply responsibilities were transferred to Scott Kogel.

42. To the best of Plaintiff's knowledge, after Plaintiff's termination, Plaintiff's responsibilities with respect to insurance renewals were transferred to Scott Kogel.

43. As Controller, Plaintiff was responsible for handling collection calls. Prior to Plaintiff's termination, collection calls that would have previously been assigned to Plaintiff were assigned to Scott Kogel or Carolyn Pollina.

44. On April 24, 2020 (after Plaintiff was furloughed), Carolyn Pollina called Plaintiff and requested information so she could file sales tax returns and payroll tax returns for first quarter 2020. On this call, Ms. Pollina also requested information regarding Defendants' insurance policies.

45. On May 1, 2020, Ms. Pollina called Plaintiff and asked him how to handle an audit bill.

46. Based on Ms. Pollina's aforementioned communications to Plaintiff after Plaintiff was furloughed, it is believed that much of Plaintiff's responsibilities (including financial statement preparation, handling sales tax, and handling payroll taxes) were transferred to Ms. Pollina.

47. To the best of Plaintiff's knowledge, Plaintiff's responsibilities with respect to subcontractor insurance issues were transferred to Carolyn Pollina. Plaintiff believes this to be the case because while Plaintiff was still employed by Defendants, Plaintiff learned that Ms. Pollina sent subcontractor insurance information to Defendants' insurance broker.

48. Wayne Kogel was aware of Scott Kogel's age because Scott Kogel is Wayne Kogel's son.

49. Plaintiff believes that Wayne Kogel was aware of Ms. Pollina's age (or relative age) and was aware of the significant age discrepancy between Plaintiff and Ms. Pollina.  For one, Ms. Pollina had worked for Wayne Kogel back in the late 1990s.  According to Ms. Pollina's Linkedin profile, she worked for E&M Custom Flooring/Accent Building Supply as an Administrative Assistant from December, 1996 through October, 2001, around which time she resigned upon expecting her second child.  Plaintiff (who did not commence employment with Defendant Wayne Kogel until he was 45 years old) remembers Ms. Pollina bringing her first child into work when such child was a newborn.

50. To the best of Plaintiff's knowledge, Ms. Pollina was in or around her early thirties (30s) when Plaintiff started working for Defendants.

51. In Plaintiff's estimation, Ms. Pollina looked like she was in or around her early thirties (30s) when Plaintiff started working for Defendants.

52. In Plaintiff's estimation, Plaintiff looked like he was in or around his mid forties (40s) when he started working for Defendants.

53. As additional evidence that Wayne Kogel was aware of the significant age discrepancy between Plaintiff and Ms. Pollina, Plaintiff never heard Wayne Kogel make any ageist comment to Ms. Pollina or about Ms. Pollina.

54. Plaintiff was significantly more qualified and experienced to perform the duties of Controller than Scott Kogel and Carolyn Pollina.

55. Plaintiff worked for Defendant Wayne Kogel as Controller for over two (2) decades.  Neither Scott Kogel nor Carolyn Pollina possessed this type of experience.

56. To the best of Plaintiff's knowledge, neither Scott Kogel nor Carolyn Pollina possessed an accounting degree.

57. To the best of Plaintiff's knowledge, neither Scott Kogel nor Carolyn Pollina served as a Controller for any company.

58. To the best of Plaintiff's knowledge, Plaintiff was Defendants' third oldest employee at the time of termination.

*Pretext*

59. When Wayne Kogel informed Plaintiff that his employment was being terminated, Mr. Kogel indicated that the companies did not look like they were going to do well.

60. Significantly, in August, 2020 (shortly after Plaintiff's termination), Defendants posted an advertisement seeking an Assistant Bookkeeper. Defendants did not offer to hire Plaintiff for this position.

61. Defendants did not offer Plaintiff the option of accepting a pay cut rather than being terminated.

62. Defendants never formally disciplined Plaintiff, never issued Plaintiff a written warning, and never warned Plaintiff that his employment was danger.

63. To the best of Plaintiff's recollection, Defendants had issued written warnings to other employees in the past. Accordingly, it would be a deviation from Defendants' normal practices to terminate an employee for performance related issues without issuing a written warning beforehand.

64. As an example, to the best of Plaintiff's recollection, Defendants issued a written warning to Carlos (a driver for Defendants). To the best of Plaintiff's recollection, Carlos was in his forties (40s) when Defendants issued him a written warning.

65. Additionally, to the best of Plaintiff's recollection, Defendants issued a written warning to Greg Webster (a sales person for Defendants). To the best of Plaintiff's recollection, Mr. Webster was in his early fifties (50s) when Defendants issued him a written warning.

**FIRST CLAIM FOR RELIEF**
*(Violation of the ADEA by The Corporate Defendants-Age Discrimination)*

66. Plaintiff repeats and realleges each and every allegation contained herein.

67. The Corporate Defendants violated the ADEA by terminating Plaintiff because of his age.

68. As a proximate result of the Corporate Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer loss of earnings, and related employment benefits.

69. As a proximate result of the Corporate Defendants' discriminatory actions, Plaintiff has suffered emotional distress.

70. Plaintiff is entitled to an award for damages for his past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

71. Because the Corporate Defendants' violation of the ADEA was willful, Plaintiff is entitled to ADEA liquidated damages in an amount equal to his backpay award and front pay award.

**SECOND CLAIM FOR RELIEF**
*(Violation of the NYSHRL by Defendants-Age Discrimination)*

72. Plaintiff repeats and realleges each and every allegation contained herein.

73. Defendants violated the NYSHRL by terminating Plaintiff because of his age.

74. Defendants violated the NYSHRL because Plaintiff's age played a role in their decision to terminate him.

75. As a proximate result of the Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer loss of earnings, and related employment benefits.

76. As a proximate result of the Defendants' discriminatory actions, Plaintiff has suffered emotional distress.

77. Plaintiff is entitled to an award for damages for his past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

78. Due to the severity of the Defendants' conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because of his age, the Defendants knowingly violated the NYSHRL and/or acted in reckless disregard of Plaintiff's rights under the NYSHRL. Upon information and belief, the Defendants knew that it was illegal to terminate Plaintiff based on his age.

## DEMAND FOR JURY TRIAL

79. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

　i. awarding Plaintiff emotional distress damages in the amount of $125,000.00 or more;

　ii. awarding Plaintiff backpay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendants' unlawful actions;

　iii. awarding Plaintiff ADEA liquidated damages in an amount equal to his backpay award and front pay award;

    iv.    awarding Plaintiff punitive damages in the amount of $5,000,000.00 or more;

    v.    awarding Plaintiff's cost of this suit;

    vi.    awarding reasonable attorneys' fees; and

    vii.    awarding pre- and post-judgment interest.

Dated: New York, New York
July 19, 2021

*Respectfully submitted*,
**THE LAW OFFICE OF**
**JON A. STOCKMAN**

By: _/s/ Jon Stockman_
Jon A. Stockman, Esq.
32 Broadway, Suite 1710
New York, New York 10004
(516) 547-6418 telephone
jstockman@yournycattorney.com
Attorney for Plaintiff, Gregg Warner